ARCHER & GREINER, P.C.
1211 Avenue of the Americas, Suite 2750
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@archerlaw.com
   hbreakstone@archerlaw.com

*Proposed Counsel for Street Level LLC,
Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

STREET LEVEL LLC,

    Debtor.

------------------------------------------------------------x

Chapter 11

Case No. 20-12464 (JLG)

# DECLARATION PURSUANT TO
# LOCAL BANKRUPTCY RULE 1007-2

GUY BENTLEY MEEKER, JR., being duly sworn, declares as follows:

1. I am the sole member and managing member of Street Level LLC (the "**Debtor**"), a New York limited liability corporation.

2. I am acting herein on behalf of the Debtor, and am authorized to submit this Declaration, pursuant to Local Rule 1007-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York, in support of its voluntary petition.

3. Unless otherwise stated, I have personal knowledge of the facts set forth herein. I am aware of the business and financial condition of the Debtor.

4. Unless otherwise stated, all financial information contained herein is presented on an estimated and unaudited basis.

5. The Debtor is not asserting that it is a "small business debtor" as such term is used under section 101(51)(D) of the Bankruptcy Code.

6. The Debtor is not a "single asset real estate debtor" as such term is used under section 101(51)(B) of the Bankruptcy Code.

7. No other bankruptcy petition has been filed for this Debtor.

8. No committee of creditors has been formed in this case to date.

## Background

### Corporate Formation

9. The Debtor is a limited liability company organized under the laws of New York on or about May 6, 2008.

10. Since its inception in 2008, the Debtor has leased and operated one of the premier event venues in New York.

### The Venue

11. The Debtor leases and operates an event venue named "Hudson Mercantile" (the "**Venue**") located at 500 West 36th Street (a/k/a 465 Tenth Avenue), New York, New York 10018. The building in which the Venue is located is a 109 year old, six floor, industrial building (the "**Building**") now located amidst the new Hudson Yards neighborhood.

12. The Venue is a collection of three unique spaces on three floors of the Building, consisting of a ground floor gallery space, an upper level studio space and a rooftop.

13. The ground floor gallery consists of a grade level, drive-in, raw venue with dark concrete floors, white walls, high ceilings, a 25 foot professionally built cyclorama and three discrete entrances. With 5,200 usable square feet it is particularly suitable for tradeshows, fashion presentations and cocktail receptions.

14. The sixth floor studio, accessed by a pair of private express elevators, is a 6,000 square foot raw venue with white walls and elegantly rustic concrete floors, 14 foot ceilings and natural light on all four sides.

15. The rooftop is 5,000 square feet of venue space. The rooftop is truly a New York experience, and is one of the largest in Manhattan, featuring a wide open space that can either be used *al fresco*, or can be fully enclosed and tented to provide climate controlled space. With unimpeded views of the Hudson River, the Empire State Building, the New York Times building, and the New Yorker Hotel, the roof is known as among the most spectacular settings in all of New York City.

16. More information about the Venue can be found on the Debtor's website at http://www.mercantile-annex.com/hudson-mercantile.

17. The Debtor historically hosted various events at the Venue in each of the three areas including entertainment and cultural events, weddings, dinners, parties, product launches, corporate events and other gatherings and receptions. The Debtor is a preferred venue for many of the best event planners and service providers in the Northeast. The Venue has been mentioned in Vogue and the New York Times, and is consistently considered one of New York's top event venues, having hosted many events for the country's largest brands, celebrities and New York City's elite.

18. The Debtor's business generated gross revenue in 2017, 2018 and 2019 in excess of approximately $1,618,398.00 per annum.

**Management Services**

19. The Debtor receives management services from Bentley Meeker Lighting & Staging, Inc. ("**BMLS**"), a sister company which I also control and operate (the ownership of

which differs somewhat from that of the Debtor). BMLS is a lighting and staging company known for creating unique light environments for various events all over the United States. These events include celebrity weddings, White House functions, fashion shows, corporate happenings, movie and television premiere events, and hotel and museum events. BMLS occupies the other three floors in the Building and the cellar, from which BMLS operates its lighting and staging business, including studio and industrial space, equipment storage and office space. BMLS is my commercial lighting venture although I also work as a lighting artist and have been recognized in the contemporary art world.

20. In 2008, the opportunity arose to operate the Venue after a prior venue operator ceased its operations, and I formed and organized the Debtor to do so, staffed up and entered into a sublease. The Debtor and BMLS each sublease their respective portions of the Building from the Building's prime tenant, which leases the Building on a triple-net basis from a third party owner/lessor.

21. BMLS provides the Debtor with bookkeeping services and the provision of event supervision, billing, staffing, payroll, health coverage and utilities. BMLS also maintains insurance on the Venue on behalf of itself and the Debtor, which is current, and it intends to preserve such coverage. Proof of insurance will be provided to the United States Trustee.

22. The management and bookkeeping services provided by BMLS are accounted for in the form of "due to/due from" entries in the books of both BMLS and the Debtor.

23. Customers who book events at the Venue with the Debtor exclusively book with BMLS, under a separate contract, to light, stage and produce the events (although BLMS provides lighting and staging services to a variety of customers for events in a variety of other venues).

24. Debts, including intercompany debts, exceed the amount of the Debtor's current net revenue. Tax returns are filed and current through 2018 filed in 2019. 2019 filings have been delayed given the pandemic.

## Circumstances Leading to this Chapter 11 Case

### Pandemic

25. Despite a strong 2019 and start to 2020, on March 11, 2020, the World Health Organization officially declared COVID-19 a pandemic. In response, national, state, and local governments around the United States imposed shelter-in-place and stay-at-home orders, as well as social distancing protocols.

26. As a result of the pandemic, the event industry and the Debtor's operations were brought to a halt. The Debtor used to have scores of events per week, often simultaneously. Since temporarily shutting down operations in March 2020, the Debtor has not hosted events or generated revenue until just recently.

27. The Debtor went from four in staff to one, whose duties include customer-facing relationships, and went from dozens of freelance staff to zero.

28. In the face of these circumstances, the Debtor has had to restructure its business strategy to emphasize the use of its outdoor rooftop event space. Given local regulations, the Debtor has just begun to book and host events on the rooftop including a series of comedy events. As New York City slowly loosens restrictions on social gatherings, the Debtor hopes to be able to expand its ability to host events. The focus of the restructured business strategy will need to be the rooftop as restrictions on indoor gatherings remain in place and personal preferences remain on the side of outdoor events.

29. While the Debtor believes it can successfully pivot to an outdoor-focused event model, which distinguishes this Venue from others, the Debtor has been faced with the need to plan for long term survival through the prolonged effects of the COVID-19 pandemic, while suffering from prolonged lack of revenues.

**State Court Litigation**

30. The effects of the COVID-19 pandemic and the related concerns have recently been exacerbated. The Debtor's sublessor (and Building prime tenant), Hudson Yard Holdings LLC, and the prime lessor, have been faced with litigation in the Supreme Court of the State of New York, County of New York (the "**State Court Litigation**"), for an order and judgment pursuant to Section 881 of the New York Real Property Actions and Proceedings Law (the "**RPAPL**") for access to the property where the Venue is located by the adjacent land owner and construction developer, 451 Tenth Avenue LLC (the "**Developer**"). The State Court Litigation is styled, *451 Tenth Avenue LLC v. Hudson Yard Holdings LLC (a/k/a Hudson Yards Holdings LLC) and Dagyam 467 10th Avenue Inc.*, Index No. 154394/2020, and assigned to Hon. Debra A. James. The Developer sued the Building owner and the prime tenant. Neither the Debtor nor BMLS is a party to the State Court Litigation.

31. In the State Court Litigation, the Developer of the adjacent property seeks physical access to the Building where the Venue is located, and especially to the rooftop, in such a way that threatens to preclude the Debtor's use of the rooftop for events and to devastate its now make-or-break rooftop event market. The Debtor fears that the damage to its rooftop business will be a death blow.

32. Specifically, the Developer seeks to cover the rooftop of the Venue for a period of up to two years in what it calls an "Overhead Protection System" including scaffolding, padding

and nets, in order to facilitate construction of the adjacent property. Additionally, the Developer seeks the removal of certain rooftop air conditioning units that provide cooling to the Venue.

33. Section 881 of the RPAPL places into the hands of the New York court the decision of how to implement between neighbors a construction and compensation scheme, if the parties cannot agree on the terms to do so. Pre-litigation negotiations between the parties yielded no resolution and no resolution has been reached during the pendency of the litigation.

34. As of the date of this filing, no dispositive order or judgment has been entered in the State Court Litigation. The Debtor believes that any judgment in the State Court Litigation that severely effects the functionality or the desirability of the rooftop of the Venue has the potential to destroy the Debtor's business and restructuring strategy in these difficult times for the event industry and beyond. The automatic stay would prohibit any act of any party to interfere with property of the Debtor's estate, including the rooftop and the Debtor's ability to operate its activities on the rooftop and otherwise at the Venue.

35. The Debtor believes its restructuring strategy in the form of a strategic pivot to rooftop events along with the anticipated, limited return of indoor events will be sufficient to support a reorganization within the parameters of chapter 11. The Debtor fears the irreversible economic devastation of its business for a period of years, in the event of a judgment in favor of the neighboring developer which would be expected to destroy for a prolonged period of years any rooftop event market at the Venue.

36. In order to continue to stay certain aspects of the litigation and interference with its business, and allow the Debtor to address a restructure of its finances and reimagine its operations, the Debtor files this chapter 11 case.

37. The Debtor intends to seek authority from the Court at the outset, among other things, to (i) stay any effectuation of disposition of the State Court Litigation, but not insofar as the non-dispositive litigation activity, until the point of effectuation or implementation of any order or judgment that would interfere with the Debtor's operations; (ii) maintain the management and financing relationship with BLMS as is throughout the chapter 11 case; (ii) retain counsel; and (iv) retain accountants.

**Motions**

38. Together with the petition and this declaration, the Debtor files certain motions. This declaration shall serve as my statement in support thereof and adopting the representations set forth therein. The motions include:

- Debtor's Motion for Entry of Interim and Final Orders Authorizing Debtor to (i) Continue Use of Existing Cash Management System; and (ii) Obtain Post-Petition Unsecured Financing by Continuing Ordinary Course Intercompany Transactions; and

- Debtor's Motion for an Order Relieving Automatic Stay to the Extent Necessary to Permit Continuation of State Court Litigation.

**Other Disclosures Required by Local Rule 1007-2**

39. Local Rule 1007-2 requires the Debtor to disclose certain information. The information is outlined below and set forth in the exhibits attached hereto.

40. As required by Local Bankruptcy Rule 1007-2(a)(1), a statement regarding the nature of the Debtor's business and the circumstances leading to the filing of the chapter 11 case is set forth above.

41. As required by Local Bankruptcy Rule 1007-2(a)(2), the Debtor's case was not originally commenced under chapter 7 or chapter 13 of the Bankruptcy Code.

42. As required by Local Bankruptcy Rule 1007-2(a)(3), no committee was organized in the Debtor's case before the Petition Date.

43. As required by Local Bankruptcy Rule 1007-2(a)(4), a list of the Debtor's twenty largest unsecured creditors is attached hereto as Exhibit "A". The Debtor reserves any and all rights (i) as to whether any claim is contingent, unliquidated, disputed or subject to setoff, (ii) to challenge the priority, nature, amount and status of any claim or debt, and (iii) to assert any remedies, defenses, counterclaims and offsets with respect to each of the foregoing.

44. As required by Local Bankruptcy Rule 1007-2(a)(5), a list of the Debtor's five largest secured creditors is attached hereto as Exhibit "B". The Debtor reserves any and all rights: (i) as to the validity, enforceability and priority of each claim and lien, and (ii) to assert remedies, defenses, counterclaims and offsets with respect to such claim.

45. As required by Local Bankruptcy Rule 1007-2(a)(6), a summary of the Debtor's assets and liabilities is attached hereto as Exhibit "C".

46. As required by Local Bankruptcy Rule 1007-2(a)(7), the Debtor does not have any classes of publicly held stock, debenture or other securities.

47. As required by Local Bankruptcy Rule 1007-2(a)(8), the Debtor is not aware of any property being held in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity, except as to the management arrangement set forth above.

48. As required by Local Bankruptcy Rule 1007-2(a)(9), the Debtor must list premises owned, leased or held under another arrangement from which the Debtor operates its business. The Debtor leases the Venue as set forth above.

49. As required by Local Bankruptcy Rule 1007-2(a)(10), the Debtor must list the location of the Debtor's substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtor outside the territorial limits of the United States. The Debtor's main asset is the Venue leased at 500 West 36th Street (aka 465 Tenth Avenue), New York, New York 10018. The Debtor previously had a bank account with Investors Bank. In accordance with chapter 11 operating guidelines, the Debtor has opened up a Chase Total Business Checking Account with JP Morgan Chase, N.A., an approved banking institution in this district. The Debtor's books and records are located with BMLS at 500 West 36th Street (a/k/a 465 Tenth Avenue), New York, New York 10018.

50. As required by Local Rule 1007-2(a)(11), a list of the nature and present status of each action or proceeding, pending or threatened against the Debtor or its property where a judgment against the Debtor or seizure of the Debtor's property may be imminent as of the Petition Date is attached hereto as Exhibit "D."

51. As required by Local Bankruptcy Rule 1007-2(a)(12), the Debtor must list its existing senior management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience. I am the only senior manager. I have been principal of the Debtor since 2008 and am in charge of all daily operations and staff. I have worked in events and lighting since the age of 14 and have worked on over 10,000 events. I was honored to become a member of the International Special Event Society Hall of Legends.

52. As required by Local Bankruptcy Rule 1007-2(b)(1), given the current circumstances, there is no estimated weekly payroll.

53. As required by Local Bankruptcy Rule 1007-2(b)(1), given the current circumstances, there is no estimated compensation to officers and directors in the thirty-day period following the Petition Date.

54. As required by Local Bankruptcy Rule 1007-2(b)(3), the Debtor has not ascertained whether cash receipts in the thirty-day period following the Petition Date will be obtained and has to ascertain what disbursements to suppliers, vendors, utilities, insurance, employees and other expenses may be required.

55. The Debtor intends to supplement the disclosures set forth herein to the extent required, as information and documents become available.

I hereby declare, under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code as if sworn before a notary, that the foregoing is true to the best of my knowledge, information and belief.

Dated: New York, New York
October 19, 2020

_____
Guy Bentley Meeker, Jr.
*Managing Member and Sole Member*

# INDEX TO EXHIBITS

Exhibit "A" – Debtor's Twenty Largest Unsecured Creditors

Exhibit "B" – Debtor's Five Largest Secured Creditors

Exhibit "C" – Balance Sheet

Exhibit "D" – Schedule of Lawsuits

# EXHIBIT A

# DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS

| Name of creditor and complete mailing address, including zip code | Nature of Claim | Amount of Claim | Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| Hudson Yards Holding, LLC<br>465 Tenth Avenue, 2nd Floor<br>New York, NY 10018 | Real Property Lease | $453,125.00 | n/a |
| Ark Restaurants Corp.<br>85 5th Avenue, 14th Floor<br>New York, New York 10003 | Trade | 80,685.00 | n/a |
| Guy Bentley Meeker, Jr.<br>465 Tenth Avenue, 2nd Floor<br>New York, NY 10018 | Chapter 11 Retainer | 51,717.00 | n/a |
| Bentley Meeker Lighting & Staging, Inc.<br>465 Tenth Avenue, 2nd Floor<br>New York, NY 10018 | Chapter 11 Retainer | 40,000.00 | n/a |
| Steven Kratchman Architect, P.C.<br>23 Warren St., Store #9<br>New York, NY 10007 | Architectural | 37,125.00 | n/a |
| Neat Commercial Cleaning Corp.<br>983 E. 88th Street<br>Brooklyn, NY 11236 | Janitorial | 8,385.00 | n/a |
| Expert Elevators<br>19005 Hillside Avenue #L2<br>Jamaica, NY 11423 | Trade Debt | 4,115.50 | n/a |
| Filco Carting Corp.<br>197 Snediker Avenue<br>Brooklyn, NY 11207 | Garbage Removal | 3,404.00 | n/a |
| Fire Department of New York<br>9 MetroTech Center<br>Brooklyn, NY 11201 | Municipal | 3,235.00 | n/a |
| Scheman & Grant<br>545 Eighth Avenue<br>New York, NY 10018 | Cleaning Supplies | 3,004.00 | n/a |
| W.B. Mason<br>59 Centre Street<br>Brockton, MA 02303 | Trade Debt | 2,510.00 | n/a |
| TripleSeat Software LLC<br>300 Baker Avenue, Suite 205<br>Concord, MA 01742 | Software Services | 1,543.00 | n/a |
| H&H Glass and Doors<br>13 Orange Street<br>Norwalk, CT 06850 | Repairs | 1,533.00 | n/a |
| HALO Branded Solutions<br>1500 HALO Way<br>Sterling, IL 61081 | Utilities | 1,374.00 | n/a |

| Name of creditor and complete mailing address, including zip code | Nature of Claim | Amount of Claim | Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| Broadview Networks<br>800 Westchester Ave. N501<br>Rye Brook, NY 10573 | Utilities | 859.99 | n/a |
| A. Cruz Enterprises<br>97-21 Cresskill Place<br>Jamaica, NY 11435 | Services | 463.00 | n/a |
| Alliance Glass & Door<br>660 Lexington Avenue<br>New York, NY 10022 | Repairs | 400.00 | n/a |
| M&K HVAC<br>Attn: Mauro Flores Medina<br>241-23 85th Road<br>Bellrose, NY 11426 | Repairs/Maintenance | 0.00 | n/a |

# EXHIBIT B

## DEBTOR'S FIVE LARGEST SECURED CREDITORS

| Name of creditor and complete mailing address, including zip code | Nature of Claim | Amount of Claim | Contingent, Unliquidated, or Disputed |
|---|---|---|---|
| N/A | | | |

# EXHIBIT C

# BALANCE SHEET

**Street Level LLC, dba Hudson Mercantile**
**Balance Sheet**
As of September 30, 2020

|  | Sep 30, 20 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1000B · Investors Bank - 0608 | 10,792.83 |
| **Total Checking/Savings** | 10,792.83 |
| **Accounts Receivable** | |
| 1002 · Accounts Receivable | -153,155.38 |
| **Total Accounts Receivable** | -153,155.38 |
| **Total Current Assets** | -142,362.55 |
| **Fixed Assets** | |
| 1010 · Furniture and Equipment | |
| 1011 · Accum Dep - Furniture&Equipment | -1,415.38 |
| 1010 · Furniture and Equipment - Other | 1,415.38 |
| Total 1010 · Furniture and Equipment | 0.00 |
| 1020 · Leasehold Improvement | |
| 10200 · Radiators & Baseboard | 4,600.00 |
| 1021 · Accum Dep-Leasehold Improvement | -38,661.00 |
| 1020 · Leasehold Improvement - Other | 53,738.31 |
| Total 1020 · Leasehold Improvement | 19,677.31 |
| **Total Fixed Assets** | 19,677.31 |
| **TOTAL ASSETS** | **-122,685.24** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 2000 · Accounts Payable | 562,404.46 |
| **Total Accounts Payable** | 562,404.46 |
| **Other Current Liabilities** | |
| 2350 · Due to BMLS | 160,732.54 |
| 2550 · Sales Tax Payable | 2,268.07 |
| **Total Other Current Liabilities** | 163,000.61 |
| **Total Current Liabilities** | 725,405.07 |
| **Total Liabilities** | 725,405.07 |
| **Equity** | |
| 3300 · Members Equity | -280,672.17 |
| 3400 · Members Contribution | 2,881.89 |
| 3500 · Distribution | -92,850.45 |
| Net Income | -477,449.58 |
| **Total Equity** | -848,090.31 |
| **TOTAL LIABILITIES & EQUITY** | **-122,685.24** |

EXHIBIT D

SCHEDULE OF LAWSUITS

| CAPTION OF SUIT | CASE NUMBER | NATURE OF PROCEEDING | COURT & LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|---|
| N/A | | | | |

219480751v1